UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN NOLLEY,

     Plaintiff,

    v.

CITY OF EAST POINT, EAST
POINT POLICE DEPARTMENT,
OFFICER RODNEY ETIENNE,
OFFICER SHIRON VARNER, CITY
OF SOUTH FULTON, SOUTH
FULTON POLICE DEPARTMENT,
and OFFICER DAVID JIRA,

     Defendants.

CIVIL ACTION NO.
1:19-CV-05189-CAP

## O R D E R

    This civil rights action arises out of the events of December 18, 2018,

when the plaintiff was shot in the back and paralyzed while fleeing from

Officers Rodney Etienne and Sharon Varner of the East Point Police

Department, and Officer David Jira of the South Fulton Police Department.

The plaintiff sets forth the following counts in his complaint: (1) excessive

force against the defendant officers, pursuant to 42 U.S.C. § 1983; (2) failure

to train, discipline, and supervise against the City of East Point and East

Point Police Department, as well as the City of South Fulton and the South

Fulton Police Department,[1] pursuant to 42 U.S.C. § 1983; and (3) personal injury torts against all the defendants, pursuant to the Georgia Constitution and common law. The defendants moved to dismiss the plaintiff's claims [Doc. Nos. 2, 4, 8, 29], and their motions have been fully briefed. Subsequently, the plaintiff moved for limited discovery on the issue of qualified immunity [Doc. No. 47], and that motion is also ripe for adjudication.

## I.    The Plaintiff's Motion for Limited Discovery [Doc. No. 47]

In their motions to dismiss, the defendant officers assert the defense of qualified immunity. And because the court has not ruled on those motions, discovery in this matter has not yet commenced. The plaintiff requests that the court grant him limited discovery on the issue of qualified immunity. He argues, "The defense of qualified immunity does not create immunity from all discovery, but only from 'broad-reaching discovery,' and . . . 'limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.'" [Doc No. 47 at 3 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998))]. He then maintains that this court should apply Federal Rule of Civil Procedure 56(d)—which

---

[1] The plaintiff consented to the dismissal of the South Fulton Police Department [Doc. No. 19].

says the court may "allow [a nonmovant] time to obtain affidavits or declarations or take discovery"—and order a continuance in this matter so that the plaintiff may obtain affidavits, take depositions, or engage in discovery.

But as the defendants' response points out, all dispositive motions in this case have been filed under Rule 12, not Rule 56. As a result, all of the authority cited in the plaintiff's motion is inapplicable to the motions before the court. Moreover, the motions to dismiss are based on the allegations in the complaint, not an absence of evidence to support the allegations.  In other words, the court will be analyzing whether qualified immunity applies if all the allegations are true—not whether the plaintiff can prove the allegations. Therefore, the plaintiff's motion for limited discovery on the issue of qualified immunity [Doc. No. 47] is DENIED.

## II.  The Plaintiff's Allegations Relevant to All Claims

"Shortly after 11:00 a.m. on or about Friday, December 28, 2018, Mr. Nolley was operating a vehicle near a RaceTrac station on Camp Creek Parkway." [Doc. No. 1-1 ("Compl.") ¶ 14]. "A vehicle pursuit began involving Defendants Etienne and Varner after they noticed Mr. Nolley near Carmia Drive in the nearby Camp Creek Marketplace." Compl. ¶ 15. "The vehicle

pursuit extended to Interstate 285 southbound, wherein Defendant Jira joined the pursuit." Compl. ¶ 16.

"Mr. Nolley exited the vehicle on Interstate 285." Compl. ¶ 17. "Mr. Nolley fled on foot upon exiting the vehicle." Compl. ¶ 18. "Mr. Nolley was unarmed when he exited the vehicle and fled on foot." Compl. ¶ 19. "Despite the fact that Mr. Nolley had exited the vehicle and posed no danger to the Defendant Officers, Defendant Officers fired their service weapons at Mr. Nolley, striking him twice in the legs and twice in the back." Compl. ¶ 20. "Defendant Officers' bullets struck Mr. Nolley, thereby paralyzing him from the waist down." Compl. ¶ 21. "Mr. Nolley had not committed any violent offense, was not wanted for any violent offense, and Defendant Officers had no reason to believe Mr. Nolley posed a safety threat to anyone as he fled on foot." Compl. ¶ 26.

## III.   Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper where the moving party demonstrates that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to state a

plausible claim for relief, the Supreme Court has stressed that the Federal Rules of Civil Procedure "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a plaintiff is obligated "to provide the 'grounds' of his 'entitlement to relief,' [which] requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.

So, when deciding a motion to dismiss under Rule 12(b)(6), the court must take the complaint's well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, to avoid dismissal at the pleading stage, the complaint must contain factual allegations that "plausibly give rise to an entitlement to relief." *Id*. Additionally, the Court held in *Iqbal*—as it had in *Twombly*—that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]" which suggest lawful conduct rather than the unlawful

conduct that a plaintiff may ask the court to infer. *Id.* at 682 (citing *Twombly*, 550 U.S. at 567).

## IV.   Officer Jira's Motion to Dismiss [Doc. No. 4]

Against Jira, a member of the South Fulton Police Department, the plaintiff asserts a § 1983 claim for excessive force in Count I, and multiple state law torts in Count III. Jira argues the claims against him are due to be dismissed for three reasons: (1) the plaintiff's complaint is a shotgun pleading; (2) the plaintiff's allegations do not show Jira used excessive force; and (3) Jira is entitled to qualified and official immunity.

### A.   Whether the complaint is a shotgun pleading

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Id.* (quoting *T.D.S. Inc. v.*

*Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J. dissenting)).

A shotgun complaint can take on multiple forms: (1) the complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint; (2) the complaint replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) the complaint that does not separate into a different count each cause of action or claim for relief; (4) the complaint which asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Id.* at 1321–22. These differences aside, the "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1333. *Accord Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001); *Boatman v. Town of Oakland*, 76 F.3d 341, 343 n.6 (11th Cir. 1996).

Jira argues that the complaint is an improper shotgun pleading for three reasons: (1) the complaint employs group pleading and fails to specify

which defendant is responsible for which acts or omissions; (2) Count III incorporates all preceding paragraphs; and (3) Count III fails to separate each cause of action into different counts.

Jira is correct that the complaint uses group pleading, in the sense that it sets forth allegations and claims against the "Defendant Officers" collectively. The plaintiff alleges, "Defendant Officers fired their service weapons at Mr. Nolley," Compl. ¶ 20, "Defendant Officers' bullets struck Mr. Nolley, thereby paralyzing him from the waist down," Compl. ¶ 21, despite the fact "Defendant Officers had no reason to believe Mr. Nolley Posed a safety threat to anyone as he fled on foot." Compl. ¶ 22. He then sets forth his § 1983 claim and state law torts against the "Defendant Officers." *See* Compl., Counts I, III.

However, "[t]he fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). When a "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct," it may present an issue of proof—i.e., which of the officers actually fired the shots that struck the plaintiff—but this is not a pleading issue. *Id. Compare Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the

fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"). The plaintiff has alleged that, collectively, the three officers fired four bullets which struck him—twice in the legs and twice in the back—while he was unarmed and fleeing, and that those bullets caused him to suffer injuries, including paralysis. This is not improper group pleading.

Next, Jira correctly notes that Count III incorporates "all paragraphs stated herein." Compl. ¶ 47. This, he claims, is another hallmark of a shotgun complaint. But this is the only count where the plaintiff did so, and courts have generally reserved this categorization where "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321, *see also Keith v. DeKalb Cty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading . . . ."); *Paylor v. Hartford Fire Ins. Co.*, 748

F.3d 1117, 1126 (11th Cir. 2014) (stating that a shotgun pleading occurs where each count adopts the allegations of all preceding counts); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) (finding that the complaint was a "typical shotgun pleading" where each count incorporated all previous allegations).

Unlike the cases above, the plaintiff does not commit the sin of incorporating all preceding allegations into each count throughout the entire complaint. Count I is the § 1983 claim against the officers, Count II is the § 1983 claim against the municipalities, and Count III—the only one incorporating all allegations—is the corresponding state law claims against both the officers and the municipalities. Clearly, Count III is presented as an alternative basis for liability under Georgia law, and is not simply an improper amalgamation of irrelevant information, which is what courts seek to discourage.

Finally, Jira claims Count III violates the tenet, laid out in Rule 10(b), that each claim must be set forth in a different count. Rule 10 requires each claim to be "limited as far as practicable to a single set of circumstances" and, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." FED. R. CIV. P. 10(b). In Count III, the plaintiff essentially claims that, by shooting him while he fled unarmed, "Defendant Officers are liable to Plaintiff for assault, battery, false arrest, false imprisonment, abuse of a person in custody and negligence" under Georgia law, as well as abuse in violation of Article I, Sec. 1, Par. 17 of the Georgia Constitution. Compl. ¶ 51. He further alleges, "The actions of Defendants City of East Point, EPPD, City of South Fulton, and SFPD additionally constitute the tort of negligent entrustment under the laws of the State of Georgia." Compl. ¶ 52.

Count III is by no means the model of clarity. But neither does it fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d 1313, 1323 (11th Cir. 2015). And that is the unifying characteristic of a shotgun pleading. *Id.* (citing *Sledge*, 275 F.3d at 1018 n.8 ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading."); *Boatman*, 76 F.3d at

343 n.6 (characterizing as a " 'shotgun' pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested)). While Count III contains a litany of torts, they are all based on "a single set of circumstances": the shooting of the plaintiff by the defendant officers. In totality, the court finds that the complaint is drafted in such a way that it places Jira on notice of the claims against him, and the bases for those claims. This is all that is required.

## B.   Whether the complaint states a claim under Rule 12(b)(6)

Jira next argues that the plaintiff's allegations against him fail to show that Jira used excessive force. Alternatively, he argues that he is entitled to qualified immunity as to Count I, and official immunity as to Count III.

### 1.    Count I: Excessive force, 42 U.S.C. § 1983

Jira first argues that the plaintiff has not alleged a plausible § 1983 claim against him because his allegations utilize group pleading and fail to state which officer committed which acts. According to Jira, because the plaintiff does not state in his complaint which officer's bullets struck him where, he has not stated a claim for excessive force against Jira (or, by extension, against the other two officers). But that is not the law. As discussed above, the plaintiff has properly used group pleading to allege that each of the officers committed the acts at issue. What he has is a proof issue,

not one of pleading, and at this stage of the litigation, the plaintiff is not required to prove his allegations.

Next Jira claims that he is protected from suit by qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The plaintiff bears the burden of demonstrating that qualified immunity does not apply.[2] At this stage, he does so by alleging facts showing "(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014).

---

[2] To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). But here the plaintiff "concedes that [Jira] was acting within his discretionary authority during the time frame of this incident." [Doc. No. 27 at 12].

The plaintiff alleges that, after leading the three officers in a vehicle pursuit, he exited the vehicle and fled on foot. Compl. ¶ 19. He then claims that, despite being unarmed and posing no threat, the officers shot him four times with their service weapons as he was fleeing, striking him twice in the legs and twice in the back. Compl. ¶ 20. As a result, he was paralyzed from the waist down. Compl. ¶ 21. He avers that he had not committed any violent offense, was not wanted for any violent offense, and the officers had no reason to believe he posed a threat to anyone as he fled on foot. Compl. ¶ 22. The plaintiff, in a somewhat conclusory fashion, claims that these allegations support a finding that the use of deadly force was excessive, and violated his clearly established Fourth Amendment rights. Jira replies—while clinging to the illusion that the allegations against the "Defendant Officers" somehow fail to implicate him—that the facts alleged in the complaint only show he was at the scene, and therefore his is entitled to immunity.

The court finds that the allegations against Jira are sufficient to overcome his assertion of qualified immunity. The Fourth Amendment's guarantee of freedom from unreasonable searches and seizures also encompasses the right to be free from the use of excessive force in the course of an investigatory stop, arrest or other "seizure" of the person. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The inquiry into whether the force an

14

officer utilizes is excessive is purely objective: "the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004) (quotations omitted). "The use of deadly force is 'more likely reasonable if: the suspect poses an immediate threat of serious physical harm to officers or others; the suspect committed a crime involving the infliction or threatened infliction of serious harm, such that his being at large represents an inherent risk to the general public; and the officers either issued a warning or could not feasibly have done so before using deadly force.'" *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) (quoting *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010)).

Taking as true the plaintiff's allegations that he was fired upon while he was unarmed, fleeing, and not wanted for a violent crime, the court finds the use of deadly force was unreasonable. Unreasonable force constitutes a Fourth Amendment violation, and the plaintiff's right to be free from the use of potentially deadly force, under the circumstances, was clearly established at the time. *See, e.g.*, *id.* (unreasonable to shoot suspect wanted for nonviolent crime as he "was retreating, apparently unarmed, and outside of striking

distance" even though suspect had previously resisted arrest). Jira is not entitled to qualified immunity as to Count I.

### 2.    Count III: State law tort claims

Jira claims that Count III is barred by official immunity, and therefore must be dismissed.[3] Georgia's official immunity doctrine "offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).[4] It provides officers with official immunity for discretionary acts unless "they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST. art. I, § 2, ¶ IX(d); *see also* O.C.G.A. § 36-33-4 ("Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any

---

[3] He also claims the "Complaint lacks sufficient factual allegations—as opposed to conclusory group-pleading statements or legal conclusions—to show [the plaintiff] has a plausible claim for relief" as to the state law tort claims asserted in Count III [Doc. No. 4-1 at 11]. But he fails to offer any analysis whatsoever in support of this assertion; in fact, he does not even list the essential elements of the asserted claims. The court will not address this conclusory argument.

[4] There are differing standards of liability which turn on whether the official was engaged in a ministerial or discretionary act. *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1327 n.4 (11th Cir. 2006) (noting a law enforcement officer's decision to conduct a warrantless arrest is a discretionary act). Here, the court need only address official immunity as it applies to discretionary acts.

official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."). This is a demanding standard: "it requires an officer to act with a deliberate intention to do a wrongful act." *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (internal citations and quotations omitted). "Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008) (holding that "poor judgment, rude behavior, and reckless disregard for the rights and safety of others" does not constitute actual malice). *See also Bashir*, 445 F.3d at 1333 (holding that although sheriff's deputies acted unreasonably and violated plaintiff's Fourth Amendment rights in arresting plaintiff after their warrantless entry into his home, deputies were entitled to official immunity under Georgia law on state-law claims because plaintiff failed to demonstrate that the deputies possessed a deliberate intention to do wrong sufficient to satisfy the actual malice standard). Intent to injure is a similarly demanding standard: it requires an officer to act with "intent to cause the harm suffered by the plaintiff." *Tisdale*, 51 F. Supp. 3d at 1399.

Jira claims that the plaintiff has pled only legal conclusions regarding actual malice—such as "Defendant Officers acted with actual malice, and with specific intent to injure or commit a wrongful act," Compl. ¶ 27—which

should be disregarded, and that his factual assertions are insufficient to show actual malice. The plaintiff responds that actual malice and an "intent to injure" are shown through Jira's actions, and that this is sufficient to overcome official immunity.

"In the context of a shooting by a police officer, the Supreme Court of Georgia has held that if the officer shot 'intentionally and without justification, then [he] acted solely with the tortious actual intent to cause injury' and would not be protected by official immunity." *Porter v. Massarelli*, 692 S.E.2d 722, 726 (Ga. Ct. App. 2010) (quoting *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999)) (alteration in original). "If, however, the officer shot 'in self-defense, then [he] had no actual tortious intent to harm . . . .'" *Id.* (quoting *Kidd*, 518 S.E.2d 124). Here, the plaintiff's allegations, taken as true, establish that Jira shot the plaintiff as he was unarmed, fleeing, and not wanted for any violent offense. In other words, he shot intentionally and without justification. At the pleading stage, no more is required to overcome Jira's assertion of official immunity.

## C.   Claims against Jira in his official capacity

Jira also moved to dismiss any claims brought against him in his official capacity as duplicative of the claims brought against South Fulton. It is well established that "naming an individual defendant in his official

18

capacity in a suit in which the local governmental entity is also a named defendant is the equivalent of naming the same defendant twice; a plaintiff can not recover damages from both defendants." *Collins v. Fulton Cty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at \*10 (N.D. Ga. Dec. 26, 2012), report and recommendation adopted as modified, No. 1:12-CV-1299-ODE-JSA, 2013 WL 12177006 (N.D. Ga. Feb. 27, 2013). *See also Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, the official capacity claims against Jira are dismissed.

## V.     The City of South Fulton's Motion to Dismiss [Doc. No. 2]

The plaintiff asserts a § 1983 *Monell* claim against South Fulton in Count II, and a negligent entrustment claim in Count III. South Fulton argues that the claims against it should be dismissed because the plaintiff's allegations fail to state a claim on either count.[5]

### A.     Count II: *Monell* claim, 42 U.S.C. § 1983

Under § 1983, any "person" who, under color of law, causes a United States citizen to be deprived of a constitutional right may be liable at law or in equity. 42 U.S.C. § 1983. In 1978 the Supreme Court determined that

---

[5] South Fulton argues, just as Jira did, that the plaintiff's complaint is a shotgun pleading. The court has already addressed this argument. *See supra* Part IV.A.

municipalities are "persons" under § 1983, and therefore subject to liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). And while the Supreme Court has said municipalities do not receive qualified immunity from suit, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993), municipal liability under § 1983 is strictly limited. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

To impose § 1983 liability on a municipality, a plaintiff must show: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Prong one has already been established through the plaintiff's allegations regarding the conduct of Jira. *See supra* Part.IV.B.1.

To establish prong two, the plaintiff alleges that South Fulton had, during the relevant time period, "a policy, practice[,] or custom of using excessive force against fleeing suspects in violation of the Fourth Amendment." Compl. ¶ 41. He claims South Fulton, "failed to ensure through custom, policy and/or practice that officers would not use excessive force against fleeing suspects" despite having "actual or constructive notice of such

20

failures to train, supervise[,] and provide policies to its employees such that it was foreseeable that officers would use excessive force." Compl. ¶¶ 42, 43. These "unconstitutional municipal customs, practices and/or policies," according to the plaintiff, "amount[] to gross negligence, deliberate indifference, or intentional misconduct which directly and proximately caused the suffering, damages[,] and injuries" to the plaintiff. Compl. ¶ 45. The plaintiff claims his damages are "a direct and proximate result" of these failures by South Fulton. Compl. ¶ 46.

The plaintiff asserts that these allegations establish "without question that assault and battery of unarmed individuals was the on-going, accepted practice at the City and the City knew of, ignored, and tolerated said misconduct." [Doc. No. 17 at 11].[6] The court disagrees. Instead, these are precisely the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" criticized by the Supreme Court. *Iqbal*, 556 U.S. at 678. Instead of alleging facts which would show the court a widespread practice, the plaintiff sets forth only the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Accordingly,

---

[6] The plaintiff does concede that "[South Fulton] did not have a formal policy condoning or endorsing the assault and battery by City employees." [Doc. No. 17 at 10].

the plaintiff has not stated a § 1983 claim against South Fulton. *See Sorensen v. Nocco*, 677 F. App'x 570, 572 (11th Cir. 2017) (dismissing § 1983 because the complaint "discuss[d] only [the plaintiff's] own deficient treatment," and a single incident of unconstitutional activity is insufficient to impose liability against a municipality") (citing *Weiland*, 792 F.3d at 1328–29; *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality.") (quotation omitted)).

## B.    Count III: Negligent entrustment

In Count III, the plaintiff asserts a claim for negligent entrustment against South Fulton. Liability for the negligent entrustment of a firearm is "predicated in part upon the negligent act of the owner in lending a [firearm] to another with actual knowledge of the other's incompetence or habitual recklessness." *McBrayer v. Dickerson*, 386 S.E.2d 173, 173 (Ga. Ct. App. 1989) (citing *Pitts v. Ivester*, 320 S.E.2d 226, 227 (Ga. Ct. App. 1984)). As South Fulton points out, there are no allegations regarding Jira's incompetence or habitual recklessness in the complaint, much less allegations that South

Fulton had notice of any such acts. Accordingly, the plaintiff has failed to state a claim for negligent entrustment against South Fulton.[7]

## VI.   Officers Etienne and Varner's Motion to Dismiss [Doc. No. 29]

The plaintiff asserts a § 1983 claim for excessive force in Count I, and state law torts in Count III, against officers Etienne and Varner, members of the East Point Police Department. They argue that the claims against them are due to be dismissed because the plaintiff's allegations do not overcome their assertions of qualified and official immunity. They also argue that even if the plaintiff's claims proceed, he is not entitled to punitive damages.

### A.   Count I: Excessive force, 42 U.S.C. § 1983

The excessive force claims brought against Etienne and Varner are identical to the one brought against Jira, and the same legal framework applies. *See supra* Part IV.B.1. Accordingly, the claim turns on "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger*, 381 F.3d at 1248.

---

[7] South Fulton has also moved to dismiss any claims for punitive damages against it. But because all substantive claims against it are being dismissed, the court need not address this argument.

Etienne and Varner argue that their actions were reasonable because they "believed that Plaintiff was actively committing a felony by fleeing Defendant Officers, the general public was at danger due to Plaintiff driving through Camp Creek Marketplace and Interstate 285, and Defendant Officers were in danger due to Plaintiff's actions in leading them in a high speed pursuit." [Doc. No 29-1 at 11–12]. Accordingly, they "reasonably believed that the use of deadly force was necessary to prevent Plaintiff's escaping and further endangering the general public and officers." [Doc. No. 29-1 at 12].

Even assuming that the "vehicle pursuit" referenced in the complaint occurred at "high speed" and endangered the public, as Etienne and Varner claim, their argument is flawed because they shot the plaintiff after the vehicle pursuit concluded and he had abandoned the car. Once that occurred, the general public was no longer endangered by the plaintiff's driving, and the officers were no longer "in danger due to Plaintiff's actions in leading them in a high speed pursuit." Accordingly, their use of deadly force at that time was not reasonable, and their actions  as alleged violated the plaintiff's Fourth Amendment protection against the use of excessive force. And because this right was clearly established at the time, Etienne and Varner are not entitled to qualified immunity as to Count I. *Cf. Salvato*, 790 F.3d at 1293

24

(finding the use of deadly force was unreasonable where plaintiff alleged that he was fired upon while he was unarmed, fleeing, and was not wanted for a violent crime).[8]

### B.     Count III: State law tort claims

Etienne and Varner next claim that the plaintiff failed to allege facts sufficient to show they acted with actual malice. But the court has already explained that if the plaintiff's allegations show that an officer shot intentionally and without justification, he acted solely with the tortious actual intent to cause injury and would not be protected by official immunity. *Porter*, 692 S.E.2d at 726; *see also supra* Part IV.B.2. The plaintiff's allegations are that Etienne and Varner shot the plaintiff as he was unarmed, fleeing, and not wanted for any violent offense. Therefore, they are not entitled to official immunity as to Count III.[9]

---

[8] Etienne and Varner argue that the plaintiff is not entitled to attorney's fees under 42 U.S.C. § 1988—the fee shifting provision associated with § 1983— because his § 1983 claim fails. But that claims survives, and, therefore, so does the plaintiff's opportunity to recover attorney's fees under § 1988.

[9] Etienne and Varner claim they are entitled to prevail on the issue of official immunity because the plaintiff fails to address it in his response brief. The court's reading of the plaintiff's response, however, shows that while he comingles his arguments and case law addressing qualified and official immunity, he substantively responds to both.

Further, the court notes that the plaintiff brought claims against Etienne and Varner in their official capacities. Compl. ¶¶ 10, 11. But any claim against them in their official capacities is duplicative of the claims brought against East Point. It is well established that "naming an individual defendant in his official capacity in a suit in which the local governmental entity is also a named defendant is the equivalent of naming the same defendant twice; a plaintiff can not recover damages from both defendants." *Collins*, 2012 WL 7802745, at *10. *See also Busby*, 931 F.2d at 776. Accordingly, the official capacity claims against Etienne and Varner are dismissed.

## C.   Punitive Damages

Etienne and Varner also claim that the plaintiff is not entitled to punitive damages under federal or state law. Under federal law, an award of punitive damages is appropriate only when "the defendant was motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights." *Anderson v. City of Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). Similarly, under state law, "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or

that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.

Etienne and Varner argue that, because the evidence shows that they reasonably believed that the use of deadly force was necessary to prevent the plaintiff's escape, there cannot be a finding that they were motivated by an evil motive, reckless disregard, or callous indifference towards the plaintiff's rights. But the court reached the opposite conclusion: their use of deadly force, as alleged, was not reasonable; it was done intentionally and without justification. Because their argument fails, the plaintiff's punitive damages claim survives.

## VII. The City of East Point and the East Point Police Department's Motion to Dismiss [Doc. No. 8]

The plaintiff asserts against East Point a § 1983 *Monell* claim in Count II, and a negligent entrustment tort claim in Count III. East Point argues that the claims against it should be dismissed because the plaintiff's allegations fail to state a claim on either count.[10]

---

[10] The East Point Police Department moved to be dismissed because it is not an entity capable of being sued; it is merely a part of the City of East Point. The plaintiff agrees that "The City of East Point is the appropriate legal entity for liability in the case at bar." [Doc. No. 21 at 5]. Because the East Point Police Department is not a proper party to this case, the claims against it are due to be dismissed.

27

### A. Count II: *Monell* claim, 42 U.S.C. § 1983

The plaintiff seeks to hold East Point liable under § 1983 by alleging it had a policy, practice, or custom of using excessive force against fleeing suspects in violation of the Fourth Amendment, just as he did as to South Fulton. He must show: (1) a constitutional right was violated; (2) East Point had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell*, 392 F.3d at 1289 (citing *City of Canton*, 489 U.S. at 388).

East Point's arguments here are essentially the same as South Fulton's were on its § 1983 claim. And they are successful for the same reason—the plaintiff asserted the same conclusory allegations. *See supra* Part V.A.[11]

---

[11] He alleges that East Point had, during the relevant time period, "a policy, practice[,] or custom of using excessive force against fleeing suspects in violation of the Fourth Amendment." Compl. ¶ 41. He claims it, "failed to ensure through custom, policy and/or practice that officers would not use excessive force against fleeing suspects" despite having "actual or constructive notice of such failures to train, supervise[,] and provide policies to its employees such that it was foreseeable that officers would use excessive force." Compl. ¶¶ 42, 43. These "unconstitutional municipal customs, practices and/or policies," according to the plaintiff, "amount[] to gross negligence, deliberate indifference, or intentional misconduct which directly and proximately caused the suffering, damages[,] and injuries" suffered by the plaintiff. Compl. ¶ 45. The plaintiff claims his damages are "a direct and proximate result" of these failures by East Point. Compl. ¶ 46.

In his response the plaintiff argues, "Looking at the facts presented as a whole, the conduct was so perpetual that the misconduct of employees was widespread and ignored." [Doc. No. 21 at 9]. Noticeably absent from the brief, however, is a citation to the complaint where these "facts" can be found. But the plaintiff marches on, stating (without citation), "In 2016, officers of [East Point's] task force were accused in the shooting of a victim 76 times. It is apparent that no policy has been put in place regarding the excessive force and behaviors of their officers." [Doc. No. 21 at 9]. These allegations, however, are also absent from the complaint.

"A plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1292 n.4 (N.D. Ga. 2019) (quoting *In re Androgel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010). And once the conclusory allegations and threadbare recitals are removed from the plaintiff's complaint, it is clear he has not stated a § 1983 claim against East Point.

## B.    Count III: Negligent entrustment

The plaintiff asserts a claim for negligent entrustment against East Point, which is also substantively identical to the one asserted against South Fulton. And like the *Monell* claim, the outcome is the same. *See supra* Part

V.B. East Point moves to dismiss, arguing that the claim is barred by sovereign immunity and improperly pled. As stated, actual knowledge of another's "incompetence or habitual recklessness" is essential to a negligent entrustment claim. *McBrayer*, 386 S.E.2d at 173. There are neither allegations regarding Etienne or Varner's incompetence or habitual recklessness in the complaint, nor any allegation that East Point had knowledge of any such acts. Accordingly, the plaintiff has failed to state a claim for negligent entrustment against East Point.[12]

## VIII.  Conclusion

Based on the foregoing analysis, the court makes the following rulings: The plaintiff's motion for limited discovery [Doc. No. 47] is DENIED. Officer Jira's motion to dismiss [Doc. No. 4] is GRANTED IN PART. The claims against him in his official capacity are DISMISSED. The motion is otherwise DENIED. The City of South Fulton's motion to dismiss [Doc. No. 2] is GRANTED. All claims against it are dismissed. Officers Etienne and Varner's motion to dismiss [Doc. No. 29] is DENIED. However, the claims brought against Etienne and Varner in their official capacities are improper,

---

[12] The court need not address sovereign immunity.

so those claims are DISMISSED. The City of East Point's motion to dismiss

[Doc. No. 2] is GRANTED. All claims against it are dismissed.

**SO ORDERED** this 16th day of April, 2020.


/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge

31